Williams, Judge,
delivered the opinion of the court:
Plaintiffs, on or about August 30, 1932, were employed by the ■ Federal Home Loan Bank Board to devise and *39 prepare accounting forms, to prescribe the procedure thereunder for the conduct of the operations of twelve regional Federal Home Loan Banks, and the necessary reports to’ be made by such banks to the board at Washington, D. C.,. and to perform other services necessary and incident to the carrying out of the engagement.
Plaintiffs promptly began work and completed the same without delay. The blank forms and procedure thereunder were approved and accepted by the Federal Home Loan Bank Board, and the board ordered such forms and procedure to be printed and distributed to the newly created banks. Plaintiffs thereafter rendered a bill to the Federal Home Loan Bank Board for $4,560.72 in full for all services performed and expenses incurred by them under the contract, and requested payment thereof. The board duly approved plaintiff’s bill and transmitted it to the General Accounting Office for preaudit before payment. The General Accounting Office refused to authorize payment of the bill on the ground that the board was not authorized by law to make an agreement of that character. The bill has never been paid, hence this suit.
The refusal of the General Accounting Office to authorize the payment of plaintiffs’ bill was based on the provisions of section 5 of the act of April 6, 1914, 38 Stat. 335, Title 5, U. S. C. A. Sec. 55, which provides as follows:
No part of any money appropriated in any Act shall be used for compensation or payment of expenses of accountants or other experts inaugurating new or changing old methods of transacting the business of the United States * * *, unless authority for employment of such services or payment of such expenses is stated in specific terms in the Act making provision therefor and the rate of compensation for such services or expenses is specifically fixed therein.
It may be conceded that this provision of law, if standing alone, would justify the decision of the General Accounting Office in refusing to pay plaintiffs’ bill. It does not stand alone, however, and we are of the opinion from the language used by Congress in the Federal Home Loan Bank Act, that it was not intended that it shotild apply to the Federal Home Loan Board in the selection of its employees and agents. *40 Section 18. of that Act, 47 Stat. 737, Title 12, U. S. C. A. 1438, 1439, provides:
There is hereby authorized to be appropriated the sum of not to exceed'$300,000 for salaries, travel and subsistence expenses, rents, printing and binding, furniture and equipment, lawbooks, books of reference, periodicals, newspapers, maps, contract stenographic reporting services, telephone and telegraph services, and all other necessary expenses of the Board, together with expenses preliminary to the organization and establishment of the banks created hereunder, until the end of the fiscal year 1933.
Section 19 carries the further provision:
The board shall have power to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the performance of its duties under this chapter without regard to the provisions of other laws applicable to the employment or compensation of officers, employees, attorneys, and agents of the United States. * * *; and shall determine its necessary expenditures under this chapter and the manner in which they shall be incurred, allowed, and paid.
It is a familiar rule of construction that in enacting a new statute the legislature is presumed to know the existing law (In re McKenzie, 142 Fed. 383), and it must be presumed in this case that Congress'in enacting sections 18 and 19 of the Federal Home Loan Act was cognizant of section 5 of the act of April 6, 1914, supra, and intended that the board should not be controlled by the general provisions of that Act. It is a' further well-recognized rule of statutory construction that, in the cáse of .one statute dealing with a subject in a general and comprehensive way and a later statute deals with part of the same subject in a more definite and minute way, the later statute will .prevail. Snitkin v. United States, 265 Fed. 489; Jackson v. Cravens, 238 Fed. 117. In the instant case the Federal Home Loan Bank Act in sections 18 and 19 deals with the matters of the expenditures of the board in a specific and definite manner. The provisions of this Act must prevail over the general provision contained in the act of April 6, 1914. The plaintiff is therefore entitled to a judgment of $4,560.72 on its claim.
*41 The defendant has filed a counterclaim in the sum of $19,362.63, which remains to be considered.
By the act of January 22, 1932, 47 Stat. 5, Congress created the Reconstruction Finance Corporation for the purpose of lending money to various enterprises. The Act set aside $50,000,000 of the capital of the corporation to be loaned by the Secretary of Agriculture to farmers. This sum was deposited in the. United States Treasury in a special account entitled “The Secretary of Agriculture, acting pursuant to the Act of Congress approved January 22,1932, creating the Reconstruction Finance Corporation.” Following the passage of this Act plaintiffs were employed by the Secretary of Agriculture to inaugurate and develop accounting procedure for crop production - loans to be made by the Secretary of Agriculture from the aforesaid .fund. Plaintiffs entered upon their work and completed it prior, to March 3, 1933, and for their services ivero paid the sum of $19,362.63, in installments, the last payment being in May 1933. Payments '.were made from' the fund deposited in the Treasury by the Reconstruction Finance-Corporation, as stated above.
In 1934 the Comptroller General notified the Secretary of Agriculture of his disallowance of the vouchers and payments issued to; plaintiffs and pursuant to Such disallowance the defendant now pleads as a counterclaim the amount so-paid plaintiffs, $19,362.63. Tire-defendant contends that the payments of these sums to plaintiffs were illegal because of the provision of section 5 of the act of April 6, 1914, which has heretofore been quoted and need not be restated. This provision is not applicable here for the reason that the Secretary of Agriculture was acting as the agent of the Reconstruction Finance Corporation in the employment of plaintiffs and in the payment of their compensation (37 Op. Atty. Gen. 1).
Section 4 of the Act creating the Reconstruction Finance Corporation provided that the Reconstruction Finance Corporation should have power—
to select, employ, and fix the compensation of such officers, employees, attorneys, and agents as shall be necessary for the transaction of the business of the cor-, poration, without regard to the provisions- of other laws *42 applicable to the employment and compensation of officers or employees of the United States. * * *
The Board of Directors of the corporation shall determine and prescribe the manner in which its obligations shall be incurred and its expenses allowed and paid.
The Secretary of Agriculture, acting as an agent of the Reconstruction Finance Corporation, had all the powers of that corporation to the extent not specifically restricted. It follows therefore that if the Reconstruction Finance Corporation could select its own employees and compensate them “without regard to the provisions of other laws,” the Secretary of Agriculture had the same powers, as agent of the corporation, in the absence of any restrictions in the Act. It is therefore held that the disbursements made by the Secretary of Agriculture, which form the basis of the counterclaim, were legally made. The counterclaim must be dismissed. It is so ordered.
LittletoN, Judge; Greek, Judge; and Whaley, Chief Justice, concur.
Whxtakek, Judge, took no part in the decision of this case.